695 So.2d 679 (1997)
Leo Alexander JONES, Petitioner,
v.
Robert BUTTERWORTH, etc., et al., Respondents.
No. 90231.
Supreme Court of Florida.
May 22, 1997.
Order Modifying Opinion on Rehearing June 13, 1997.
*680 Martin J. McClain, Litigation Director and Gail E. Anderson, Assistant CCR, Office of the Capital Collateral Representative, Tallahassee, for Petitioner.
Robert A. Butterworth, Attorney General; Richard B. Martell, Chief, Capital Appeals and Curtis M. French, Assistant Attorney General, Tallahassee, for Respondent.
PER CURIAM.
By order dated April 10, 1997, this Court relinquished jurisdiction to the trial court to conduct an evidentiary hearing on the petitioner's claim that electrocution in Florida's electric chair in its present condition is cruel and unusual punishment. Following a fourday hearing, the trial court entered an order dated April 21, 1997, denying petitioner's claim. We will now address the petitioner's appeal from that order.
On April 11, 1997, the circuit court held a telephonic status hearing at which petitioner's claim was scheduled for hearing to begin on April 15, 1997. At that time, petitioner pointed out that he did not yet know the availability of the expert witnesses upon which he would rely. In the meantime, on the same day the Governor announced that he had received the reports of the two engineers, Dr. Michael S. Morse and Jay Wiechert, he had appointed to examine the electric chair and that they had concluded that the brass screen originally suspected as causing flames to erupt during Pedro Medina's execution was not the cause. Rather, these experts concluded that the Medina incident was "the result of using a dry sponge between the wet sponge and the conductive screen in the headpiece" and "was probably exacerbated by the use of a .9 percent saline solution rather than a saturated salt-water solution." The Governor directed that the Department of Corrections put in place the recommendations contained in the engineers' report.
Prior to the start of the evidentiary hearing, petitioner filed a motion for continuance which asserted that none of his expert witnesses could be available to testify at the scheduled hearing, but the motion was denied. During the course of the hearing, state witnesses explained that new written protocols for carrying out executions were being developed based upon the recommendations of the engineers who had examined and tested the electric chair. However, the witnesses *681 had not seen these written protocols. Following the noon recess on April 16, the state provided the petitioner with the new written protocols covering execution in the electric chair which had just been signed by Secretary Singletary that day. These protocols consisted of two documents, entitled "Testing Procedures" and "Execution Day Procedures." At this point, petitioner claimed that he was unable to effectively cross-examine the state's experts concerning these protocols because he had not had an opportunity to submit them to his own experts. The court denied the petitioner's further motion for continuance. It was not until April 21, 1997, after testimony was closed, that the state also provided petitioner with the requested chart recordings pertaining to the performance of the electric chair during Pedro Medina's execution.
Petitioner attaches to his brief in this Court affidavits of several experts purporting to explain what testimony they would have given had they been able to appear at the hearing. The affidavit of the engineer, Robert H. Kirschner, specifically asserts the existence of certain deficiencies in the state's new protocols concerning the electric chair. In view of the fact that the state's conclusion as to the cause of the Medina incident had changed shortly before the hearing, that petitioner did not have the benefit of examining the state's new protocols at the beginning of the hearing, and that he was unable to present any live testimony from expert witnesses, we once again relinquish jurisdiction to the trial court to hold an additional hearing according to the following directions:[1]
1. Within ten days from the date of this order, the trial court shall set the new hearing for a date certain during the month of July.
2. No discovery depositions shall be permitted.
3. The parties may present additional testimony and evidence at this hearing, including testimony of any witnesses who testified at the previous hearing. The petitioner may require Morse and Wiechert to be present and to undergo cross-examination.
4. At the conclusion of said hearing, the trial court shall consider the testimony and evidence presented at both hearings and enter a new order on petitioner's claim by no later than August 8, 1997.
5. This Court shall then resume jurisdiction of this matter, and the losing party shall file a brief within ten days following such order. The prevailing party shall file a brief within ten days thereafter, and the losing party may file a reply brief within five days. This Court will hear oral argument on September 8, 1997.
6. We reiterate that the sole issue to be determined is whether or not electrocution in Florida's electric chair in its present condition is cruel or unusual punishment.
We hereby vacate the trial court's order of April 21, 1997. Petitioner's execution is stayed until September 15, 1997.
It is so ordered.
OVERTON, GRIMES and HARDING, JJ., concur.
KOGAN, C.J., and SHAW and ANSTEAD, JJ., concur in result only and would remand with directions that the case be reassigned by the chief judge of the circuit to a new judge.
WELLS, J., concurs in part and dissents in part with an opinion.
WELLS, Justice, concurring in part and dissenting in part.
I would affirm the trial court's order.
I do not understand from the majority's order what the majority believes the trial court must further hear and determine in respect to the limited issue for which we relinquish jurisdiction. I am concerned that the majority's decision is a vague intrusion into procedures which this Court has previously correctly decided were within the power *682 of the Executive Branch to determine. See Buenoano v. State, 565 So.2d 309 (Fla. 1990).
Moreover, any further evidence and consideration should certainly be able to be completed in no more than twenty days. I cannot agree to further delay this case for any longer period.
I find no basis for this Court to order that the case be reassigned to a different trial judge. Therefore, I concur with the members of the Court who do not direct reassignment of this case.

ORDER ON MOTION FOR REHEARING
PER CURIAM.
Petitioner claims that our opinion is silent with respect to his contention that the trial judge erroneously denied certain motions, including his request to inspect Florida's electrocution equipment.
In the interest of fairness, we have determined that petitioner should be afforded one opportunity to have his experts examine Florida's electrocution equipment and to witness the testing thereof by the appropriate Florida officials. The State's expert as well as counsel for both parties may be present. The State shall schedule such inspection and testing to take place at least five days before the date of the hearing in this cause.
We also hold that petitioner should be permitted to have access to the following items which were heretofore requested to the extent they may still be in existence and located, to wit:
1. blood samples from the body of Pedro Medina;
2. the entire actual headpiece used during the execution of Pedro Medina;
3. the backup headpiece available during the execution of Pedro Medina;
4. any and all sponges used as part of the electrocution apparatus during the execution of Pedro Medina; and
5. the actual electrodes used during the execution of Pedro Medina.
At the hearing, petitioner shall be permitted to call as a witness any person who witnessed the execution of Pedro Medina, excepting the executioner.
Petitioner's motion for rehearing is otherwise denied.
Respondents' motion for rehearing and/or clarification is denied.
KOGAN, C.J., and OVERTON, SHAW, GRIMES, HARDING, WELLS and ANSTEAD, JJ., concur.
NOTES
[1] In establishing the time schedule set forth herein, the Court has taken into consideration the Capital Collateral Representative's representations that it has insufficient funds with which to operate for the balance of the fiscal year and the effort necessary to implement the legislative reorganization of the Capital Collateral Representative into three separate entities.